IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 3:19-00199

JOSHUA ELLIS PAHOLSKY

MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Joshua Ellis Paholsky's Motion to Suppress (ECF No. 26) and his Motion and Amended Motion to Suppress Canine Search Evidence. ECF Nos. 33, 34. On September 8, 2020, the Court held an evidentiary hearing on the motions. At the conclusion of the hearing, the Court directed the parties to submit supplemental briefs. Having received those briefs and having carefully considered the evidence and arguments of the parties, the Court **DENIES** the motions for the following reasons.

I.
FACTUAL BACKGROUND

On March 11, 2019, Andrew Richmond, a patrol officer with the Cabell County Sheriff's Department, was part of a team conducting surveillance on a particular house in the vicinity of 12th Street and 8th Avenue in Huntington, West Virginia. Based on unspecified complaints of drug activity taking place at the house, various officers were stationed nearby to observe the house, some in plain clothes and others in marked police cars. A canine unit also was positioned in close proximity.

At just before 7:00 p.m., Defendant was observed pulling away from the house under surveillance in a blue Ford Ranger truck. Lead officers directed Officer Richmond, who was driving a marked police cruiser, to follow Defendant and conduct a traffic stop. Officer Richmond testified he watched Defendant's vehicle drive away from where it was parked and he followed it for several blocks. After observing Defendant roll through several stop signs, Officer Richmond pulled over Defendant's vehicle, radioing to the dispatcher the location, a description of the vehicle, and its license plate number. Officer Richmond then walked up to the driver's window and engaged Defendant in the usual request for Defendant's identification and vehicle registration.

Immediately after or as he was obtaining this information, Officer Richmond asked Defendant for consent to search the truck. Defendant declined. Officer Richmond then called for Nate Rodgers, a deputy and canine handler with the Cabell County Sheriff's Department, to respond to the scene. Deputy Rogers, who was part of the surveillance team, testified that he was so close to the stop that he actually could see Officer Richmond as he called him. Literally within a minute, Officer Rodgers arrived, spoke to Officer Richmond, and quickly walked the dog around the truck, at which point the dog alerted. Deputy Rogers testified the dog alerted within just five or six minutes from the time he arrived on the scene.

After the dog alerted, Officer Richmond asked Defendant if there was anything in the vehicle, and Defendant stated there was a firearm in it. This admission occurred after Defendant and Officer Rodgers recognized each other from Defendant having served a term of home confinement. Officer Rodgers was aware that Defendant was a convicted felon. The officers searched the inside of the truck where they found a small amount of heroin as well as the firearm.

Defendant was arrested and is charged with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

## II.
## DISCUSSION

In his motions, Defendant makes two basic arguments. First, he asserts that officers unduly extended the stop of his vehicle to conduct a drug dog search. Second, he argues the dog was not reliable enough to establish probable cause. The Court finds neither argument meritorious.

As to the first argument, the Court credits the testimony of Officer Richmond that he observed Defendant run two or more stop signs. Though Officer Richmond clearly aimed to stop Defendant to further the drug investigation, the evidence is that he followed Defendant for several blocks before initiating the stop for traffic violations, as opposed to fabricating a reason to stop Defendant immediately, and he told Defendant this reason as he began the encounter. Though pretextual to the extent that Officer Richmond's primary purpose was to question Defendant and search the truck, the Court must accept the objective basis for the stop and conclude that it was lawful at its inception.

The parties agree that a police stop which exceeds the time reasonably required to complete the issuance of the ticket for a traffic violation violates the Fourth Amendment. *See Rodriguez v. United States*, 575 U.S. 348, 350 (2015) (holding "that a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures"). However, the Fourth Amendment permits an officer to conduct an investigation *unrelated* to the reasons for the traffic stop as long as it "[does] not lengthen the roadside detention." *Id*. at 354 (citations omitted); *see also United States v. Hill*, 852 F.3d 377, 382

(4th Cir. 2017) ("While diligently pursuing the purpose of a traffic stop, officers also may engage in other investigative techniques unrelated to the underlying traffic infraction . . . only as long as that activity does not prolong the roadside detention for the traffic infraction."(citations omitted)). For instance, as recently explained by the Fourth Circuit in *United States v. Bowman*, 884 F.3d 200 (4th Cir. 2018), the police may question occupants of a vehicle "*during the course of a traffic stop*" about things unrelated to traffic violation, or have a dog sniff outside the vehicle, "as long as the police do not 'extend an otherwise-completed traffic stop in order to conduct' these unrelated investigations." 884 F.3d at 210 (italics original; quoting *United States v. Williams*, 808 F.3d 238 245 (4th Cir. 2015); *also citing Arizona v. Johnson*, 555 U.S. 323, 333 (2009), and *Illinois v. Caballes*, 543 U.S. 405, 409 (2005)). However, the Fourth Circuit reiterated that "a traffic stop becomes unlawful when it is prolonged beyond the point at which 'tasks tied to the traffic infraction are—or reasonably should have been—completed,' even if only for a *de minimis* period of time." *Id*. (quoting *Rodriguez*, 575 U.S. at 354).

Applying this standard to the present case, the Court finds that the canine search did not delay the stop beyond the time needed for the traffic infraction. After Defendant was stopped, Officer Richmond called Defendant's license plate number into dispatch before he got out of his cruiser. Officer Richmond then approached Defendant and asked for his license and registration. Officer Richmond agreed that, within a matter of seconds of approaching Defendant, he also asked to search the vehicle. Immediately after Defendant refused to consent to the search, Officer Richmond radioed for the canine. Officer Rogers said he was so close he could see Officer Richmond call him, and he responded within a minute, spoke to Officer Richmond, and quickly let the dog sniff around the outside of the truck. Officer Richmond testified that he did not believe

he had heard back from dispatch on the license plate number before he spoke with Defendant and, after he got his driver's license and registration, he called that information into dispatch. Although Officer Richmond could not recall precisely when he heard back from dispatch on the traffic stop information, it is clear that all these events were occurring simultaneously, and the dog indicated on Defendant's truck within just a few minutes of Defendant's stop. Therefore, the Court finds the canine search did not extend the duration of the stop beyond what was necessary for the traffic violation and, thus, did not violate the Fourth Amendment.

Turning next to Defendant's argument that the dog was not reliable enough to establish probable cause, the Court easily dispenses of this argument. In *Florida v. Harris*, 568 U.S. 237 (2013), the Supreme Court held

> evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert. If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search.

568 U.S. at 246-247. When challenged, as here, a court must weigh the evidence presented and determine "whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime. A sniff is up to snuff when it meets that test." *Id*. at 248. The Supreme Court cautioned about putting too much weight on a dog's field performance, stating such performance is often of "relatively limited import," with the better measure being testing in controlled environments. *Id*. at 245-46 (footnote omitted). On the other hand, a defendant "may contest the adequacy of a certification or training program" for both dog and handler, and a defendant may challenge the adequacy of a dog and its handler's performance in those settings. *Id*. at 247. *See*

*also United States v. Green*, 740 F.3d 275, 283-84 (4th Cir. 2014) (applying the *Harris* framework and concluding that, despite a field success rate of, at best, 43%, where the defendant did not introduce evidence undermining the dog's "reliable performance in training and certification programs," the dog's alert on the defendant's vehicle established probable cause for the search under the totality of the circumstances).

Here, the United States submitted evidence that the dog successfully completed a Narcotics Detection certification program through the West Virginia Police Canine Association on June 7, 2018. Both the dog and Deputy Rogers were deemed proficient in narcotics detection for a variety of narcotics, including heroin. The dog was recertified in April 2019. At the hearing, Kyle Patton, a Corporal with the Huntington Police Department and a trained canine evaluator, testified that he conducted the 2018 evaluation of Deputy Rogers and the dog. Corporal Patton specifically said the dog passed every vehicle sniff test presented, including one for heroin.[1]

Defendant complains that it is impossible to accurately demonstrate the dog's reliability because the training and field performance records were not kept separately prior to February 2020, when a new reporting system was implemented. Before that time, it appears the records were combined and collectively labeled training records. In those earlier combined records, there are instances in which the dog failed to indicate or falsely indicated. Deputy Rogers testified that he believed of the five false positives in the earlier records, three or four of them may have being during a training session, but he was not sure of it.

---

[1] The dog also passed the vehicle sniff test for marijuana, cocaine, and methamphetamine. The parcel sniff test for marijuana and cocaine, and the interior building sniff test for marijuana, cocaine, heroin, and methamphetamine.

This evidence, however, is not sufficient to sway the Court in Defendant's favor. Certainly, a dog is not infallible and occasionally may make a mistake. Even if the dog had three or four false positives during training, Defendant has not shown the dog's overall accuracy in a controlled setting was so deficient to show he was unreliable. Indeed, the evidence establishes the opposite is true as he successfully passed the certification program in 2018 and was recertified in 2019.

Defendant also complains that Deputy Rogers testified the dog had different methods of alerting to narcotics. Sometimes the dog would pitter-patter with his front feet and sit down. Other times he just sits down. Defendant contends this inconsistent behavior forces Deputy Rogers to guess whether the dog actually is alerting to narcotics. However, Deputy Rogers explained that he has found the dog's pitter-patters are almost always an accurate alert. When the alert does not involve a pitter-patter and the dog just sits, Deputy Rogers testified that he takes the dog around the vehicle again and, if the dog sits in the same place on the second pass, it is considered a reliable hit and the dog is rewarded. The Court finds Deputy Rogers' conclusions are not mere guesses, as Defendant suggests, but are based upon extensive training and familiarity with the dog's behavior.

Defendant also assails the dog's reliability because the records indicate the dog falsely indicated when frustrated and wanted his toy. Deputy Rogers testified that he could tell when the dog would sit down merely because he wanted his ball, and he took steps to curb the behavior. Once the dog realized he would not get his toy as a reward under those circumstances, the behavior stopped. Deputy Rogers testified this training occurred before the events of this case.

Although Defendant argues the dog has a bad track record, the Court finds the evidence does not bear out that argument. Based upon the dog's successful completion of the certification program and Defendant's failure to introduce sufficient evidence to undermine the dog's reliability, the Court finds from the totality of the circumstances the dog's alert on Defendant's vehicle established probable cause for the search. Therefore, the Court denies Defendant's argument.

## III.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **DENIES** Defendant's Motion to Suppress (ECF No. 26) and his Motion and Amended Motion to Suppress Canine Search Evidence. ECF Nos. 33, 34.

Having ruled on Defendant's motions, the Court reschedules the trial of this matter for **November 17, 2020,** at **8:30 a.m.** Proposed voir dire, jury instructions, and witness lists are now due on **November 10, 2020**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER:   October 6, 2020

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE